**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

E. MICHAEL E.,

      Plaintiff,

      v.

FRANK BISIGNANO,
  COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

No. 25 CV 1290

Magistrate Judge McShain

**MEMORANDUM OPINION AND ORDER**

Plaintiff E. Michael E. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse and remand the Commissioner's decision [11, 12] is granted, the Commissioner's motion for summary judgment [20] is denied, the case is remanded for further administrative proceedings.[1]

**Background**

In November 2020, plaintiff applied for a period of disability and disability insurance benefits, alleging an onset date of February 27, 2020. [10-1] 15. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge (ALJ). [*Id.*] 15–30. The Appeals Council denied review in December 2024, *see* [*id.*] 1–3, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff has appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date through December 31, 2021, which was his date last insured. [10-1] 17. At step two, the ALJ determined that plaintiff had the following severe impairments: obesity; degenerative disc disease cervical and lumbar spine; and status post bilateral hip arthroplasties. [*Id.*] 17–19. At step three, the ALJ concluded that plaintiff's

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record, [10-1], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [8].

impairments did not meet or equal the severity of a listed impairment. [*Id.*] 19–20. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform medium work, except that plaintiff: (1) could not climb ladders, ropes or scaffolds; (2) could not work around unprotected heights or unprotected dangerous moving machinery; and (3) could not[3] frequently climb ramps and stairs as well as stoop, kneel, crouch, and crawl. [*Id.*] 20–26. At step four, the ALJ held that plaintiff could not perform his past relevant work as a computer technician. [*Id.*] 26–28. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: counter supply worker (35,000 jobs), order picker (10,000 jobs), and hospital cleaner (55,000 jobs). [*Id.*] 28–29. Accordingly, the ALJ concluded that plaintiff was not disabled. [*Id.*] 29–30.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (citation modified).

## Discussion

Plaintiff argues that the denial of benefits should be reversed because the ALJ (1) erred by finding that plaintiff's right wrist osteoarthritis was non-severe, and (2) improperly evaluated the medical opinion evidence when she determined that plaintiff was capable of a full range of medium exertional level work, other than the specific exceptions included in the RFC. *See* [12] 1. The Court agrees that the ALJ erred when weighing the medical opinion evidence. Because that error was not harmless,[4] a remand is required.

SSA regulations define the physical exertion requirements of medium level work as involving: "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §

---

[3] Reading the ALJ's decision, it is not clear to the Court if the RFC restricted or allowed plaintiff to engage in frequent climbing of ramps and stairs as well as to stoop, kneel, crouch, and crawl. However, the Court's holding is the same whether these activities were allowed or restricted.

[4] Plaintiff explained that if the ALJ had found plaintiff limited to light work, in accordance with the rejected medical opinions, the SSA's Medical-Vocational Guidelines would have led to a finding of disability based on plaintiff's age and the vocational expert's testimony. [12] 15. The Commissioner did not dispute this argument. [20].

404.1567."Light work . . . requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls" *Id.*

The ALJ rejected five record medical opinions to support her finding that plaintiff could complete medium level work: (1) a lower extremity residual functional capacity questionnaire from plaintiff's primary care provider, Dr. Carli Spanik; (2) a 2021 functional capacity assessment; and (3-5) the findings of three state agency medical consultants. [10-1] 21–26. While the medical opinions did not assess identical physical limitations for plaintiff, they all concluded that plaintiff was impaired in ways that would preclude work at the medium level. [12] 13; [20] 9; [10-1] 513–16. The ALJ discussed all five opinions and found them unpersuasive. [10-1] 21–26. The ALJ did not identify any other medical opinions relevant to her determination of plaintiff's RFC. [20] 1 (acknowledging that the ALJ "was not obligated to rely on a medical opinion in making the administrative determination of plaintiff's work capacity.").

An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . [plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or administrative finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors" and an "ALJ must explain how she considered those factors, but she is not required to articulate how she evaluated the other factors." *Id.* "In considering the supportability and consistency of a medical opinion, an ALJ need only minimally articulate her reasoning for the persuasiveness of the medical opinion." *Lisa L. v. O'Malley*, No. 20-CV-50395, 2024 WL 1013977, at *2 (N.D. Ill. Mar. 8, 2024) (citation modified). When determining the supportability of a medical opinion, an ALJ is instructed to look to "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id.* "[F]or an opinion to be consistent, it must be, reductively, consistent with the record." *Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *2 (N.D. Ill. Mar. 29, 2024). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

3

In 2019, Dr. Spanik opined that plaintiff had several physical limitations that interfered with his ability to work, including: being unable to stand or walk more than 2 hours in an 8-hour workday, never lifting more than 50 pounds, and rarely lifting more than 20 pounds. [10-1] 414–16. The ALJ considered this opinion unsupported because it was written after just one exam of the plaintiff, in which her findings "were relatively unremarkable in terms of strength, stability and neurological function." [*Id.*] 23–24. The ALJ also found it inconsistent with the rest of the record for several reasons. First, Dr. Spanik's subsequent treatment notes did not record that plaintiff was referred for "any [additional] evaluation or treatment, and [she] didn't see the claimant again for nearly two years[.]" [*Id.*] 24. Second, Dr. Spanik's treatment notes recorded "full or nearly full strength in all extremities for the most part during the period at issue . . . [and] no joint or spinal instability." [*Id.*]. Third, Dr. Spanik's notes "fail[ed] to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." [*Id.*] And finally, that "the course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly as limited as the doctor has reported[.]" [*Id.*].

Plaintiff claimed that the lack of follow-up treatment after his visit with Dr. Spanik was due to his lapse in insurance coverage rather than evidence that his conditions were not as severe as recorded. [12] 11. Dr. Spanik's treatment notes corroborated this explanation: in 2019 she recorded that plaintiff declined a cervical spine MRI due to his imminent loss of insurance. [10-1] 664. However, the ALJ determined that the lapse in insurance coverage was insufficient to explain the lack of evidence regarding any other treatment, such as emergency rooms.[5] [*Id.*] 25–26. The ALJ also found relevant that plaintiff did not explain why he did not apply for or have Medicaid or any other form of low cost or free medical coverage, [*Id.*] 25–26, but the Court does not see that the ALJ ever asked plaintiff for an explanation, [*Id.*] 38–96.

Plaintiff underwent a functional capacity assessment in September of 2021. [*Id.*] 512. That assessment found several physical limitations regarding plaintiff's ability to grasp with his right hand, as well as limiting frequent lifting to only 17 pounds and a limitation on ever lifting anything over 30.2 pounds. [*Id.*] 513–16. In rejecting the 2021 functional capacity assessment, the ALJ acknowledged that it included "limitations on hand/arm use" but found the assessment "not persuasive[.]" [*Id.*] 24. The ALJ determined that the opinion was not well supported because it was "based on only a one-time assessment that lasted only four hours." [*Id.*]. And the ALJ explained that she found the opinion inconsistent with the record because it was "not

---

[5] The Commissioner argued that plaintiff's briefing conceded that he had medical insurance by July 2021 but that "he failed to seek medical treatment after July 2021 until eight months later." [20] 6. Further, the Commissioner noted that despite plaintiff having insurance in 2021, Dr. Spanik did not order a follow-up to the x-ray until May 2023 or refer plaintiff to any specialists during the relevant period. [*Id.*]. However, this was not discussed in the ALJ's decision and so the Court does not find it relevant to its analysis.

supported by the overall medical record, which demonstrates only routine and conservative treatment during the relevant period, with no referrals to or evaluations by specialists, and very limited evidence of positive or abnormal examination findings for the period at issue, as discussed [elsewhere in the opinion][.]" [*Id.*].

Finally, the record contained three opinions from state agency medical consultants and physicians authored between 2021 and 2022. [*Id.*] 26. These physicians considered plaintiff's medical records, including Dr. Spanik's treatment notes, plaintiff's hip replacement surgery, and 2021 x-rays. [*Id.*] 158–59, 188, 191, 472–73. All three doctors found that plaintiff had several exertional limitations including limits regarding the weight that plaintiff could lift. In October 2021, Dr. Gotanco found that plaintiff could only occasionally lift or carry 20 pounds and stand or walk for a total of 2 hours a day. [*Id.*] 161–63. In November 2021, Dr. Hegde concurred that plaintiff could only occasionally lift or carry 20 pounds. [*Id.*] 479, 485. And finally, in October of 2022, Dr. Greco opined that plaintiff could only occasionally lift or carry 20 pounds and stand or walk for a total of 2 hours a day. [*Id.*] 187, 191. The ALJ found all three opinions unpersuasive because:

> The [s]tate agency medical opinions . . . [were] not supported by the objective medical evidence or the course of treatment during the relevant period, which has been sporadic and conservative in nature. The claimant has not undergone injections, physical therapy or surgery during the relevant period. Nor was he seen by pain management or any other specialist during the period. All treatment has been rendered by a general practitioner, and her exams do not support the degree of limitation opined by the [s]tate [a]gency medical consultants.

[*Id.*] 26. While the Court understands the ALJ's reference to the lack of specialized or other treatment during the applicable period as a determination that the opinions were inconsistent with the record, the ALJ's statement that the opinions were unsupported by objective medical evidence appears conclusory. First, the ALJ did not even state the objective evidence relied on in those opinions, let alone why that evidence failed to support those doctors' opinions. Second, those medical providers reviewed x-rays and considered the impact of plaintiff's prior medical history, including hip replacement surgery, when assessing his physical limitations. Determining the significance of medical findings is something for which an ALJ must rely on experts. *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves.").

In summary, the ALJ rejected all the relevant medical opinions in the record primarily based on plaintiff's lack of follow-up or specialized treatment during the applicable period. [20] 1 ("The main factor that drove the ALJ's decision is the sparse and conservative treatment plaintiff received for his impairments."). Yet the ALJ still

concluded that the RFC she developed was proper and that plaintiff could perform medium exertional level work with some limitations:

> The medical record supports the above residual functional capacity assessment. Based on a review of the full record, I find that during the period at issue the claimant retained the capacity for a full range of medium work, as defined in the Regulations, except: no climbing ladders, ropes or scaffolds; no working around unprotected heights or unprotected dangerous moving machinery; frequent climbing ramps and stairs, stooping, kneeling, crouching and crawling. Those limitations accommodate his medically determinable impairments and the subjective symptoms that could reasonably be attributed to such impairments, during the period at issue.

[10-1] 26.

The Court finds that remand is warranted here for two reasons. First, the ALJ failed to sufficiently explain how she considered the supportability of the state agency medical providers' opinions when deeming all three unpersuasive. Despite each doctor relying on medical records and x-rays, the ALJ simply states that their opinions are "not supported by the objective medical evidence." [*Id.*] 26. "The court has to be able to trace the path of the ALJ's reasoning[.]" *Sherise K. v. Dudek*, No. 24 C 11199, 2025 WL 1260831, at *2 (N.D. Ill. Apr. 30, 2025).

Second, by rejecting all the relevant medical opinions in the record regarding plaintiff's physical limitations, the ALJ "created an evidentiary gap that rendered the ALJ's RFC finding unsupported by substantial evidence." *Ana M.A.A. v. Kijakazi*, No. 19-CV-7559, 2021 WL 3930103, at *2 (N.D. Ill. Sept. 2, 2021). While the ALJ referenced the overall medical record in justifying her determination, "the ALJ is not a medical expert and cannot interpret medical evidence." *Barbarigos v. Berryhill*, No. 17 C 3234, 2019 WL 109373, at *12 (N.D. Ill. Jan. 4, 2019); *Daniels v. Astrue*, 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012) ("Once the ALJ determined that . . . [the medical] opinions were insufficient and unsupported by the medical evidence, the ALJ had a duty to conduct an appropriate inquiry to fill that gap. What the ALJ could not do was fill in the gap on her own."); *see also Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). The ALJ could have, but did not, fill this evidentiary deficit by seeking an opinion from an independent medical expert or plaintiff's doctor. *Gail A. v. Kijakazi*, No. 21 C 502, 2023 WL 8935003, at *4 (N.D. Ill. Dec. 27, 2023) (collecting cases remanding ALJs' decisions because they failed to obtain more information to close an evidentiary deficit).

To be clear, the Court is not finding that it was an error for the ALJ to conclude that all the relevant medical opinions were unpersuasive. And the Court acknowledges that an ALJ need not adopt a medical opinion when fashioning an RFC.

*Vang v. Saul*, 805 F. App'x 398, 401–02 (7th Cir. 2020); *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021). However, the ALJ must still "tie[] the record evidence to the limitations included in the RFC finding." *Vang*, 805 F. App'x at 402 (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 497–98 (7th Cir. 2019)). The Court is unable to discern what evidence the ALJ relied on when determining, contrary to all the medical opinions in the record, that plaintiff's RFC allowed him to complete medium level exertional work with some limitations. The ALJ's decision needs to contain "what is necessary to build a logical bridge between the evidence in the record and h[er] ultimate conclusions, whatever those conclusions may be." *Gail A.*, 2023 WL 8935003, at *7. The ALJ's decision here is insufficient for the Court to find that substantial evidence supported: (1) her rejection of the state agency medical providers' opinions, and (2) her subsequent determination of plaintiff's RFC.

## Conclusion

Plaintiff's motion to reverse and remand [11, 12] is granted and defendant's motion for summary judgment [20] is denied. The decision of the Social Security Administration is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 26, 2026**

7